UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ERICA P. SMITH,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-35

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**SUPPLEMENTAL REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This Social Security disability benefits appeal is before the Court on objections filed by both parties (docs. 11, 13) to the undersigned's Report and Recommendation (doc. 10). Judge Rice subsequently recommitted this case to the undersigned for a supplemental Report and Recommendation. Doc. 14. As noted in the undersigned's initial Report and Recommendation (doc. 10), the ultimate issue on appeal is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this supplemental Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

I.

The procedural history, evidence of record, standard of review, and the definition of disability were all set forth in detail in the Report and Recommendation, *see* doc. 10 at PageID 1507-10, AND ARE incorporated by reference into this Supplemental Report and Recommendation as if fully rewritten herein.

In her Statement of Errors, Plaintiff argued that the ALJ, *inter alia*, erred by assessing the weight accorded to the medical source opinions of record. Doc. 7 at PageID 1333-42. With regard to medical source opinions, Plaintiff challenged the ALJ's analysis of opinions given by: (1) treating psychiatrist Chang Pan, M.D.; (2) examining psychologist Alan R. Boerger, Ph.D.; and (3) record reviewing psychologists Roseann Umana, Ph.D. and Caroline Lewin, Ph.D. *Id*. The undersigned previously found error in the ALJ giving "significant weight" to the opinions of non-treating psychologists Boerger, Umana, and Lewin; and, based on finding such error, declined to determine whether the ALJ erred in analyzing Dr. Pan's findings. Doc. 10 at PageID 1511-12.

A.   **Plaintiff's Objection**

Plaintiff objects to the undersigned's decision to make no finding regarding the ALJ's analysis of Dr. Pan's opinion. The undersigned finds her objections to the Report and Recommendation well-taken.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians like Dr. Pan top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical

2

source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted).

Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.927(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

3

the treating source's medical opinion and the reasons for that weight.'" *Id*. Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406.

In this case, Dr. Pan found Plaintiff markedly limited[3] in two areas of mental functioning and opined that, as a result of her mental impairments, she would miss about two days of work per month, and would be distracted for about half of the workday. PageID 1310. The ALJ declined to give Dr. Pan's opinion "controlling, or even deferential weight," and ultimately found it entitled to "little weight" because:

> The psychiatrist consistently reported a Global Assessment of Functioning (GAF)[4] score of 70, indicative of only mild symptoms, impairment in

---

[3] Whereas "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C) *et seq*.

[4] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id*. A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id*. A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id*. A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *Id*.

>functioning, or both, upon discharge from the hospital. He further reported that the claimant had a history of poor compliance with treatment. In his response to the attorney-generated questionnaire, Dr. Pan reported a GAF score of 55-60, which would be indicative of moderate symptoms, moderate impairment in functioning or both, which was inconsistent with his conclusion that the claimant's psychiatric symptoms were of Listing level severity.

PageID 66. Essentially, the ALJ gave "little weight" to Dr. Pan's opinion because he found it at odds with: (1) Plaintiff's GAF scores of 70; and (2) her poor compliance with mental health treatment. *Id*. The undersigned finds error in the ALJ's reliance on these two factors.

First, with regard to GAF scores, it is improper for an "ALJ [to] use[ ] unqualified data, provided by [a] professional as a macroscopic evaluation, to disprove the professional's more detailed, expert functional assessment." *Smith v. Astrue*, 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008); *see also Cornelison v. Astrue*, No. ED CV 11–440–PLA, 2011 WL 6001698, at *8 (C.D. Cal. Nov. 30, 2011); *cf. Ott v. Comm'r of Soc. Sec.*, No. 1:08–CV–00399, 2009 WL 3199064, at *9 (S.D. Ohio Sept. 29, 2009). As a result, this Court has held that a "GAF score, alone, cannot discredit [a treating's physician's] assessment of Plaintiff's limitations[.]" *Mosley v. Comm'r of Soc. Sec.*, No. 3:14-cv-278, 2015 WL 6857852, at *5 (S.D. Ohio Sept. 14, 2015).

Further, the ALJ's focus on Plaintiff's GAF scores at discharge from medical care fails to acknowledge that Dr. Pan assessed GAF scores of 30 on numerous occasions. *See* PageID 531, 543, 549, 556, 560, 791, 1050. A GAF of 30 "reflects a person whose behavior is 'considerably influenced by delusions or hallucinations,' or 'serious impairment in communication or judgment,' or 'inability to function in almost all areas.'" *Marshall v. Astrue*, No. CIV.A. 08-181-GWU, 2009 WL 902431, at *6 (E.D. Ky. Mar. 31, 2009); *see also Jensen v. Comm'r of Soc. Sec.*, No. 1:12-CV-737, 2014 WL 1328160, at *4 (W.D. Mich. Mar. 28, 2014). An "ALJ must consider all the record evidence and cannot 'pick and choose only the evidence that supports his

5

[or her] position." *Hawthorne v. Comm'r of Soc. Sec.*, No. 3:13–cv–179, 2014 WL 1668477, at *11 (S.D. Ohio Apr. 25, 2014) (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000)).  Based on the foregoing, the undersigned finds the ALJ's reliance on selected GAF scores does not provide a "good reason" for giving little weight to Dr. Pan's opinion.

Second, absent more specific explanation by the ALJ, it is not clear to the undersigned why Plaintiff's "history of poor compliance with treatment" undermines Dr. Pan's specific opinion concerning Plaintiff's mental RFC.  PageID 66.  The Sixth Circuit has stated that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state" because "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009).  Absent any further explanation by the ALJ, the undersigned finds that Plaintiff's poor compliance with mental health treatment does not provide a good reason for giving little weight to Dr. Pan's opinion.  *See Russell v. Comm'r of Soc. Sec.*, 14 F. Supp. 3d 921, 929 (S.D. Ohio 2014).

Accordingly, the undersigned recommends reversal of the ALJ's non-disability finding.

**B.    The Commissioner's Objection**

The Commissioner objects to the Report and Recommendation insofar as the undersigned previously found that, in setting forth the weight accorded to the opinions of the three non-treating psychologists -- *i.e.*, Drs. Boerger, Umana, and Lewin -- the ALJ cited no evidence of record.  Doc. 10 at PageID 1512.  The Commissioner, in her objection, correctly points out that the ALJ did cite certain findings as support for the RFC determination at a subsequent part of his decision -- namely, findings by Dr. Boerger that, during a one-time examination, Plaintiff "recalled eight random digits forward and three in reverse, but was unable to perform 'serial

6

7s.'" PageID 67. However, the Commissioner's correct contention in this regard does not impact the undersigned's conclusion that the ALJ's non-disability is unsupported by substantial evidence and should be reversed.

Notably, although Dr. Boerger provided no opinion concerning Plaintiff's specific work limitations, *see* PageID 566-72, Drs. Umana and Lewin reviewed Dr. Boerger's findings and concluded that Plaintiff could perform routine, repetitive tasks and have occasional, superficial interactions with others. PageID 120, 122, 140, 163. Thus, ultimately, the ALJ's RFC finding is based upon giving "significant weight" to the opinions non-treating, non-examining psychologists Umana and Lewin. *See id.*; *see also* PageID 65.

As found by the undersigned in the Report and Recommendation, Dr. Boerger's report (dated March 8, 2012) and the opinions of Drs. Umana and Lewin (dated March 20, 2012 and September 20, 2012, respectively) all predate numerous treatment records in evidence. *See* PageID 1311-42, 1440-65. They also predate Dr. Pan's opinion. *See* PageID 1308-10. The Commissioner did not object to the undersigned's conclusion in this regard. "When an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,'" an ALJ must generally indicate "that [he or she] at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).

Here, the ALJ's decision is devoid of any consideration of treatment records contained in Exhibit 43F from July 30, 2012 to June 5, 2013, *see* PageID 1311-42; or Exhibit 50F regarding impatient mental health treatment from March 7, 2013 to March 11, 2013, *see* PageID 1440-65.

This error, in addition to the ALJ's error in assessing the opinion of Dr. Pan, results in the ALJ's non-disability finding being unsupported by substantial evidence.

### C. Remand

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, although a significant argument could be made that Dr. Pan's disabling opinion should be given deferential, if not controlling weight, the undersigned finds evidence of disability is not overwhelming. Accordingly, the undersigned concludes that remand for further proceedings is proper so that the ALJ can properly assess all opinion evidence of record and determine Plaintiff's RFC anew. To that end, the undersigned recommends that a medical expert be utilized in order to accurately assess the entire medical record.

### II.

**IT IS THEREFORE RECOMMENDED THAT:** (1) the Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**; (2) this

matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case be **CLOSED**.

Date:   February 3, 2016                            *s/ Michael J. Newman*
                                                    Michael J. Newman
                                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).